ELECTRONICALLY FILED
2016 May 12 AM 10:42
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER:  2016-CV-000166

Jane Doe 7

vs.

The University of Kansas

## SUMMONS

To the above-named Defendant/Respondent:

**The University of Kansas**
**1450 Jayhawk Blvd.**
**Lawrence, KS  66045**

You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Dan Curry
406 W. 34th Street
Suite 810
Kansas City, MO 64111

within 21 days after service of summons on you.



Clerk of the District Court

**Documents to be served with the Summons:**
DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000166 FSDate 4/18/2016

Received

MAY 2 5 2016

Kansas Attorney General

**EXHIBIT A**
**Page 1**

ELECTRONICALLY FILED
2016 Apr 18 PM 4:58
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000166

IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS
CIVIL COURT DEPARTMENT

| | | |
|---|---|---|
| JANE DOE 7, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| THE UNIVERSITY OF KANSAS, | ) | Chapter 60 |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## PETITION

1.     Plaintiff Jane Doe 7 brings this suit to seek compensation and redress for harms she suffered as a result of a hostile educational environment created by the Defendant University of Kansas in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a). Plaintiff also brings this suit to seek compensation and redress for harms she suffered as a result of disability discrimination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.

2.     This court has jurisdiction over Plaintiff's Title IX claims and Rehabilitation Act claims. A Kansas District Court is a court of general jurisdiction. *Undrey Engine & Pump Co. V. Eufaula Enterprises ,Inc.*, 22 6 Kan. 186, 190, 597 P.2d 246 (1979). State courts have "inherent authority, and are thus presumptively competent, to adjudicate claim arising under the laws of the United States." *Yellow Freight Systems, Inc. v. Donnelly*, 494 U.S. 820, 823 (1990).

3.     Plaintiff Jane Doe 7 is a female student and athlete who at all relevant times was and remains a student, resident and athlete at the University of Kansas.

**EXHIBIT A**
**Page 2**

4.    At all material times, the University of Kansas ("KU") was a Kansas educational institution located in Douglas County, Kansas, and the recipient of federal grant funds and financial assistance.

5.    John Doe G was at all times relevant a KU student, a resident of the KU dormitory known as the Jayhawker Towers, and a KU football team member, until his expulsion from KU in early 2016.

6.    Title IX, 20 U.S.C. § 1681(a) states:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance.

7.    A school that receives federal funds violates Title IX and is subject to a private action for damages where the school is "deliberately indifferent" to known acts of discrimination against students. *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988).

8.    The protections of Title IX extend to situations where the school is deliberately indifferent to the sexual harassment of a student by another student. *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).

9.    KU is responsible for enforcing these policies and ensuring that its employees are adequately trained to follow these policies.

10.    KU's employees were operating within the scope of their employment at all time relevant with regard to the events described herein.

11.    KU owns and manages student dormitories, including apartments commonly known as the Jayhawker Towers, which has a specific history of publicly

2

reported sexual assaults of women, including but not limited to such recent events as:

a. In March of 2013, the KU public safety office investigated a report of a sexual assault of a female at Jayhawker Towers Apartments.

b. In October 2013, KU received a report of a rape a female KU residence hall resident by a KU student.

c. In April of 2014, a KU female residence hall student reported a rape at her residence hall.

d. In October of 2014, two female KU residence hall students reported sexual assaults at their residence hall by a KU student and another man.

e. In March of 2014, a KU football player was arrested after a 19-year-old KU student reported that she had been fondled while passed out in the parking lot of the Jayhawker Towers, where the football player was a resident.

f. On November 10, 2014, the KU public safety office received a report of an alleged sexual battery at the Jayhawker Towers.

g. In the Fall of 2014, John Doe G sexually assaulted a KU student at his apartment at the Jayhawker Towers.

h. In February of 2016, a KU football player was arrested held on suspicion of sexual battery and criminal restraint stemming from conduct at the Jayhawker Towers.

3

12.    KU's police chief for 38 years said in January of 2016 that in recent years a sharp increase of reported sexual assaults at KU has occurred, and that sexual assaults remained the biggest issue for the campus.

13.    According to the 2015 Clery Report for KU, in 2014 there were 14 rapes and 10 fondlings reported on campus, with 10 of the rapes and six of the fondlings occurring in KU's dorms – more than any other Big 12 university except the University of Texas, a much larger institution. In 2013 there were 13 forcible sex offenses reported, with 9 of them occurring in KU's dorms. In 2012, there were only 3 forcible sex offenses reported, with two in KU's dorms.

14.    In the Fall of 2014, John Doe G sexually assaulted a female KU student and member of the school's rowing team at the Jayhawker Towers.

15.    In 2014-2015, KU made representations online on the institution's website that KU and its residence halls were a "safe community" and that "Security is a priority."

16.    In 2014-2015, KU actively recruited Plaintiff to be a member of the rowing team, and Plaintiff enrolled at KU in the Fall of 2015 as a scholarship member of the school's rowing team.

17.    Plaintiff is a qualified student with a disability. During her recruitment at KU, she fully informed the coaching staff and Athletic Department that she had a serious medical condition and of her dietary needs to maintain her health.

EXHIBIT A
Page 5

18.   As part of her scholarship and to meet her dietary restrictions and nutritional needs, Plaintiff was provided a residence in Jayhawker Towers as an accommodation so she could prepare her own food.

19.   Because of her disability, Plaintiff was not able to use the KU meal plan offered to scholarship athletes.

20.   Despite actual knowledge of Plaintiff's disability, KU's rowing team recruited her to the team and at no time made her completion of high-impact workouts a condition for participating on the team.

21.   In August 2015, Plaintiff met John Doe G through a mutual friend who was also on the football team.

22.   On August 29, 2015, John Doe G sexually assaulted her in her room in Jayhawker Towers.

23.   Plaintiff confided in a friend about what occurred and chose not to immediately report the sexual assault at the time.

24.   Plaintiff participated in a regatta on October 18, 2015 and her boat placed second.

25.   On October 19, 2015, Plaintiff met with the team's sport psychologist, Sherice Sadberry, and told her about the sexual assault.

26.   Plaintiff then reported that she had been sexually assaulted to the Lawrence police and to KU's security on October 19, 2015.

27.   Later that same day, Plaintiff learned that another female student had been sexually assaulted by this same football player.

5

28.   That same day, Plaintiff also reported the sexual assault to Kyle Martinez, the athletic trainer for the rowing team, who informed the KU Team physician and also referred her to another physician for an exam. Martinez told Plaintiff she would also inform Phil Lowcock, who coordinates Student-Athlete Support for the Rowing team.

29.   Plaintiff reported her sexual assault to KU's Institutional Opportunity & Access ("IOA") office on October 27, 2015. Plaintiff met with the IOA investigator and provided him details of her assault.

30.   Plaintiff told the KU athletic trainer that she had to miss some practices to see the doctor and participate in the IOA meeting, and she was excused from practice on those days by the trainer.

31.   In October 2015, the football player assailant sent a "snapchat" to Plaintiff after she reported her sexual assault to KU in an attempt to intimidate her.

32.   On November 2, 2015, the entire rowing team was required to attend a sexual assault education meeting.

33.   During the remainder of the school year, Plaintiff made a valiant effort to a have a normal college experience, but she avoided "Late night at the Phog" and no longer went to football games or other sporting events for fear of seeing her assailant. Plaintiff became hyper-vigilant on campus and worried about her safety.

EXHIBIT A
Page 7

34.     Plaintiff often feels anxious and nervous around the athletes, is easily tearful, sometimes paralyzed with fear and infuriated with anger. She has experienced flashbacks of the sexual assault.

35.     The head coach of the KU rowing team was and remains Rob Catloth, and the assistant coach was Carrie Callen.

36.     Plaintiff has a medical condition that prevents her from participating in high impact training from time to time.

37.     Instead of addressing or accommodating her specific limitations, Coach Catloth decided Plaintiff had a heart condition and that she needed physical therapy on her ankle even though there is nothing wrong with her heart, even though there is nothing structurally wrong with her ankle, and even though her position on the rowing team does not require strenuous physical exertion.

38.     Coach Catloth made ongoing discriminatory remarks about some of the rowers and comments about the weight of the female athletes, calling some of the women "fat."

39.     Several rowers reported Coach Catloth's conduct to KU's Senior Woman Administrator Debbie Van Saun, whose responsibility includes overseeing Title IX compliance and gender equity principles.

40.     In early October of 2016, many of the KU rowing team members met with Sherice Sadberry, a KU sports psychologist to discuss their concerns about Coach Catloth.

EXHIBIT A
Page 8

41.    At this meeting, rowing team members discussed fairness to players, discriminatory comments, and comments about players' weight, as well as concerns that their reports to KU administrator Van Saun regarding Coach Catloth's conduct were ignored.

42.    The next week, following a competition, Coach Catloth, Assistant Coach Callen, Van Saun, and the rowing team assistant coach told everyone on the team who participated in the team meeting about Coach Catloth to remain and inform them of their complaints.

43.    Many members of the rowing team repeated what they had discussed at the prior meeting, including Coach Catloth's comments and Van Saun's indifference to their reports.

44.    In late November or early December 2015, at a meeting with the coaching staff which was intended inform Plaintiff about how she was doing on the team, Coach Carrie asked Plaintiff "is KU still the place for you?"

45.    In December 2015, Coach Catloth informed Plaintiff that he would not allow her to attend an annual training trip to Florida later that month because of her attendance.

46.    Shortly thereafter, the KU rowing coaches published the list of who is going on the training trip, and the Plaintiff was not on the list, although at least one other rowing team member, who had missed more days of practice due to surgery and medical issues, was on the list and allowed to go on the training trip in December.

8

47.    During the winter break from college, Plaintiff had her tonsils out and received treatment for her ankle with the intent of making her more healthy and dependable for the rowing team.

48.    After winter break, Plaintiff returned to KU for the next semester in January of 2016, and KU still had not suspended or expelled John Doe G or concluded its investigation into Plaintiff's report.

49.    In January 2016, Plaintiff provided a note from her doctor note which requested an accommodation to her training regimen and addressed the types of workouts she should and should not do to keep her healthy.

50.    On January 21, 2016, Plaintiff was required to be tested for drugs.

51.    On or around February 1, 2016, Coach Catloth made inappropriate and insulting comments about her voice as a member of the rowing team.

52.    In late January or February 2016, Coach Rob Catloth and the KU Team Physician began the process of medically disqualifying Plaintiff from participating in collegiate sports.

53.    Coach Catloth told Plaintiff that she was "unique with your health."

54.    In early February 2016, Plaintiff arranged a meeting between her personal physician, her coaches and the KU Team physician to explain her medical condition and answer any questions or concerns that KU had about her ability to participate and compete for the team.

55.    At the meeting on February 10, 2016, the KU Physician told Plaintiff that she was a "liability" and that he knew of five other athletes who had the same

medical condition as Plaintiff and that these others did not need an accommodation for training or work-outs.

56.     Plaintiff requested accommodations for her training and work-outs as well as extensions for homework accommodations in January and February 2016.

57.     Coach Catloth failed to accommodate Plaintiff or enter into a reasonable interactive process with Plaintiff with the intent of keeping her on the rowing team at KU.

58.     During the time period of January through mid-March, 2016, the IOA office at KU kept extending the time for the investigation.

59.     On February 11, 2016, Plaintiff requested a full release from the team without any restrictions from KU.

60.     On February 16, 2016, Plaintiff withdrew from the rowing team at KU.

61.     On February 17, KU cancelled Plaintiff's athletic grant effective after the 2016 spring semester.

62.     KU had an official policy of placing KU athletes, in particular KU football players, in KU's Jayhawker Towers Apartments, where they would receive less supervision than other residence hall options.

63.     KU knew that sexual assaults were occurring at a high rate in Jayhawker Towers.

64.     KU failed to provide adequate supervision, warnings, training, guidance and education to its athletes and KU football players in particular at Jayhawker Towers.

EXHIBIT A
Page 11

65.    The likelihood of such misconduct was so obvious that KU's failure to supervise amounted to deliberate indifference to the rights of Jane Doe 7.

66.    In March of 2016, more than four months after her report, KU informed Jane Doe 7 that John Doe G had agreed to leave school.

## COUNT I: TITLE IX DISCRIMINATION – HOSTILE EDUCATIONAL ENVIRONMENT

67.    Plaintiff hereby adopts and incorporates the allegations set forth in paragraphs 1 through 66 above as though fully set forth herein.

68.    Plaintiff is a member of a protected class.

69.    Plaintiff suffered sexual harassment at the hands of a KU student and football player, in a KU dorm with a long history of sexual assaults.

70.    Plaintiff also suffered discrimination and harassment on the basis of her participation in a Title IX complaint.

71.    KU had actual knowledge that Plaintiff had been sexually harassed, that Coach Catloth was making inappropriate comments, denying her opportunities, and that John Doe G sought to intimidate her on campus.

72.    KU was deliberately indifferent to harassment Plaintiff suffered, in that:

a. KU had a policy of placing KU athletes and football players in the Jayhawker Towers knowing that they would receive less supervision, and knowing that there was a high likelihood of sexual misconduct occurring.

b. KU failed to take reasonable steps to prevent sexual assaults from occurring at Jayhawker Towers, including failing to train employees properly

11

on preventing, investigating and punishing sexual assaults on campus, and failing to adopt and implement simple, reasonable policies that would lessen the chance of sexual assaults occurring, harassment occurring, or retaliation from occurring.

c. KU failed to immediately issue a "no contact" order to John Doe G after receiving two independent reports of sexual assaults involving him.

d. KU failed to immediately suspend John Doe G pending the outcome of KU's investigation following two independent reports of sexual assault.

e. KU failed to ban John Doe G from campus pending the outcome of KU's investigation following two independent reports of sexual assault.

f. KU failed to conduct an expedient investigation or hold a timely hearing in order to resolve Plaintiff's report.

g. KU failed to take any action on Plaintiff's report and other KU rowing team members' reports of inappropriate comments and treatment from their rowing coach.

h. KU failed to stop John Doe G from harassing the Plaintiff after she reported his sexual assault.

i. KU failed to stop the KU rowing coach from retaliating against the Plaintiff for participating in the Title IX process.

73.    KU's conduct is prohibited by Title IX.

74.   The harassment was unwelcome, severe, pervasive and objectively offensive and deprived plaintiff to access of the educational benefits and opportunities KU offered, including:

a. A sexual assault in a KU dormitory;

b. Intimidation by a KU football player on campus;

c. Refusal by KU to suspend or ban the offending KU football player from campus during the investigation;

d. Deliberate refusal to allow her to participate in team activities;

e. Deliberate refusal to allow her to participate in rowing activities.

75.   The harassment had the systematic effect of depriving plaintiff of access to educational benefits or opportunities.

76.   Furthermore, Defendant KU deliberately failed to supervise employees that had the means and authority to stop the harassment Plaintiff experienced.

77.   Defendant KU's corrective or preventive opportunities regarding plaintiff's report of sexual harassment and retaliation were unreasonable or inadequate.

78.   Defendant KU's indifference and resulting inaction was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being.

79.   As a direct and proximate result of the defendant's wrongful conduct, plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-

EXHIBIT A
Page 14

esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs.

80.     Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy and counseling as well as other economic hardships.

81.     WHEREFORE, Plaintiff prays for an award of actual damages against Defendant in an amount in excess of $75,000, for attorneys fees together with interest and costs of suit, for disgorgement of tuition and board payments made on her behalf, for order enjoining KU from continuing to place administrative holds on her transcripts, and for such and further legal and equitable relief as is deemed just and proper.

## COUNT II: TITLE IX RETALIATION

82.     Plaintiff hereby incorporates and reasserts the allegations contained in paragraphs 1 – 66.

83.     Plaintiff engaged in a protected activity under Title IX when she reported her sexual assault.

84.     Contemporaneously with her protected activity, Plaintiff suffered adverse actions, including:

    a. Acts of intimidation and witness tampering.

    b. Denial of access to rowing team activities.

    c. Refusal to permit her to participate in rowing.

EXHIBIT A
Page 15

d. Refusal to accommodate and/or withdrawal of previous accommodations.

85. Plaintiff's protected activity and the adverse actions are causally connected in that:

a. Plaintiff's protected activity and KU's adverse actions occurred within days of one another.

b. The KU football player John Doe G engaged in harassment and intimidation of Plaintiff immediately after being contacted by KU regarding Plaintiff's report.

c. Coach Catloth's decision to deny her access to the team trip came shortly after Plaintiff's report of the sexual assault and the team meeting on sexual assault.

d. KU administrator Debbie Van Saun, who was a subject of the rowing team's complaints, and who failed to act on the rowing team's complaints about Coach Catloth, deliberately failed to stop John Doe G or Coach Catloth from retaliating against Plaintiff.

e. Coach Catloth's reason for not bringing Plaintiff on the team trip – her alleged attendance – is pretextual, in that at least one other athlete with more attendance issues was permitted to go.

86. Defendant KU's administration had actual knowledge of the retaliation Plaintiff was suffering:

a. Administrators knew Plaintiff was subjected to a sexual assault on campus;

b. Administrators knew that Plaintiff's rowing coach was not permitting her to travel with the team despite her qualification to do so.

c. Administrators knew that KU had not been responding effectively to Plaintiff's and the Rowing Team's reports concerning Coach Catloth.

d. Administrators knew that Plaintiff's rowing coach was actively trying to remove her from the rowing team.

87.    Defendant KU did not adequately respond to the retaliation in that:

a. KU knew retaliation was likely following her report of sexual assault but took no proactive steps such as issuing an immediate "no contact" order or suspending John Doe G, or ban him from campus, despite having two independent reports of sexual assault involving him.

b. After receiving reports of on-campus intimidation, KU failed to suspend John Doe G, ban him from campus, or issue a "no contact" order.

c. KU failed to conduct a timely investigation or hold a hearing in a timely fashion.

d. KU failed to stop Coach Catloth from denying her access to the team training event in Florida.

e. KU denied her access to the education and safe housing it promised her.

EXHIBIT A
Page 17

f. KU failed to stop its rowing coach from forcing Plaintiff off the rowing team and deterring her participation in KU activities.

88.     An appropriate person had actual knowledge of the discrimination and harassment suffered by Plaintiff.

89.     Furthermore, Defendant KU deliberately failed to supervise employees that had the means and authority to stop the harassment Plaintiff experienced.

90.     Defendant KU's indifference and resulting inaction was deliberate, wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well being.

91.     As a direct and proximate result of defendant's conduct, Plaintiff has suffered and continues to suffer great pain of mind, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, missed educational opportunities and out-of-pocket costs.

92.     Plaintiff has incurred and will continue to incur necessary and reasonable expenses for medical and psychological treatment, therapy and counseling as well as other economic hardships.

93.     WHEREFORE, Plaintiff prays for an award of actual damages against Defendant in an amount in excess of $75,000, for attorneys fees together with interest and costs of suit, for disgorgement of tuition and board payments made on her behalf, for order enjoining KU from continuing to place administrative holds on her transcripts, and for such and further legal and equitable relief as is deemed just and proper.

EXHIBIT A
Page 18

## COUNT III: DISABILITY DISCRIMINATION

94.    Plaintiff hereby incorporates and reasserts the allegations contained in paragraphs 1 – 66.

95.    Plaintiff has serious medical conditions that are disabilities as defined by the Rehabilitation Act of 1973, in that each of these conditions were physical or mental impairments that substantially limit Plaintiff in the major life activities of eating, running, and walking, concentrating, and thinking.

96.    Plaintiff is a disabled person within the meaning of the Rehabilitation Act and is a qualified person with a disability, in that, at all pertinent times, Plaintiff had physical or mental impairment that limit one or more major life activities, and that she was capable of performing the essential functions of her school programs and athletics with reasonable accommodation.

97.    At all pertinent times, Defendant was aware of Plaintiff's disabilities, her dietary and nutritional needs, her limitations on exercise, and their effect on her athletic and academic performance.

98.    At all pertinent times, Defendant was aware that Plaintiff had requested accommodations for her disabilities.

99.    Defendant failed to engage in an interactive process and failed to provide reasonable accommodation.

100.    Defendant discriminated against Plaintiff because of her disability when it excluded her from participation in the rowing program at KU and denied

18

her the benefits of the rowing program and other educational programs or activities at KU.

## COUNT IV: KCPA MISREPRESENTATION AND MATERIAL OMISSIONS

101.   Plaintiff hereby incorporates and reasserts the allegations contained in paragraphs 1 – 66.

102.   Defendant KU is a supplier under the Kansas Consumer Protection Act ("KCPA").

103.   Plaintiff was a consumer under the KCPA.

104.   Defendant KU supplied educational services, accommodations and recreational services under the KCPA to Plaintiff.

105.   Defendant KU engaged in a consumer transaction with Plaintiff when it sold educational services and leased housing to Plaintiff for her benefit.

106.   In connection with a consumer transaction, Defendant KU knowingly and willfully engaged in the following deceptive practices in connection with its consumer transaction with the Plaintiff:

a. Defendant KU made representations that its property and services possessed characteristics it did not have, including that its residence halls were "safe" and that the Jayhawker Towers in particular were "intended to provide an environment where mature, responsible students already acclimated to the rigors of college studies can succeed."

19

b. Defendant KU made representations that its property and services were of particular standard, quality and grade that differed materially from the true standard, quality and grade of the services provided to Plaintiff.

c. Defendant KU made representations that were false, exaggerated or ambiguous regarding a material fact of the safety of its residence halls and campus.

d. Defendant KU failed to state, omitted, suppressed or concealed material facts regarding the safety of its residence halls and campus, including that the number of reported assaults had been increasing, and that more assaults occurred at the Jayhawker Towers than other residence halls.

107.   Defendant KU engaged in unconscionable acts and practices when it knew or had reason to know:

a. Plaintiff was unable to receive a material benefit for their purchase of Defendant's services.

b. That Defendant KU made misleading statements of opinion on which Plaintiff was likely to rely upon to her detriment.

108.   As a direct and proximate result of Defendant KU's wrongful conduct, Plaintiff has suffered and continue to suffer emotional distress, great pain of mind, shock, emotional distress and actual damages.

109.   The greater of actual damages or civil penalty and all injunctive relief to which she is entitled.

110.   WHEREFORE, Plaintiff prays for an award of actual damages against Defendant in an amount in excess of $75,000, for attorneys fees together with

interest and costs of suit, for actual damages or the maximum civil penalty for violations of the KCPA, for such and further legal and equitable relief as is deemed just and proper.

DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury as to all triable issues.


Respectfully submitted,


/s/Dan Curry
Sarah Brown, KS 12130
Dan Curry, KS 22750
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
(816) 756-5458
sarah@brownandcurry.com
dan@brownandcurry.com

ATTORNEYS FOR PLAINTIFF

21

ELECTRONICALLY FILED
2016 May 27 AM 10:56
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000166

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

| | | |
|---|---|---|
| JANE DOE 7, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2016-CV-00166 |
| | ) | |
| UNIVERSITY OF KANSAS | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY OF APPEARANCE

COMES NOW Megan K. Walawender, Associate General Counsel for The University of Kansas, and hereby enters her appearance as counsel on behalf of The University of Kansas.

Respectfully submitted

/s/ Megan K. Walawender
Megan K. Walawender, Kansas Sup. Ct. # 22955
University of Kansas
245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045
Tel:    (785) 864-3276
Fax:    (785) 864-4617
Email: megan.walawender@ku.edu
*Attorney for University of Kansas*

{L0051876.1 }

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document was filed with the E-Filing system on May 27, 2016,

which will generate notice of filing emailed to:


Dan Curry
Sarah Brown
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
dan@brownandcurry.com
sarah@brownandcurry.com
*Attorneys for Plaintiff*

                        __/s/ Megan K. Walawender_____
                        *Attorney for University of Kansas*



## ELECTRONICALLY FILED
2016 May 12 AM 10:42
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000166

Jane Doe 7

vs.

The University of Kansas

### SUMMONS


To the above-named Defendant/Respondent:

**The University of Kansas**

**1450 Jayhawk Blvd.**

**Lawrence, KS  66045**


You are hereby notified that an action has been commenced against you in this court.  You are required to file your answer or motion under K.S.A. 60-212, and amendments thereto, to the petition with the court and to serve a copy upon:

Dan Curry

406 W. 34th Street

Suite 810

Kansas City, MO 64111


within 21 days after service of summons on you.


Clerk of the District Court


**Documents to be served with the Summons:**

DCC - Chapter 60 Non Domestic - PLE: PETITION for Case #2016CV000166 FSDate 4/18/2016

ELECTRONICALLY FILED
2016 Jun 16 PM 1:38
CLERK OF THE DOUGLAS COUNTY DISTRICT COURT
CASE NUMBER: 2016-CV-000166



**Court:**          Douglas County District Court

**Case Number:**    2016-CV-000166

**Case Title:**     Jane Doe 7 vs. The University of Kansas

**Type:**           Clerk's Extension


SO ORDERED.



/s/ Rose DelCampo, Deputy Clerk


Electronically signed on 2016-06-16 13:37:46    page 1 of 3

## IN THE DISTRICT COURT OF DOUGLAS COUNTY, KANSAS

JANE DOE 7,                                )
                                           )
                    Plaintiff,             )
                                           )
v.                                         )        Case No. 2016-CV-00166
                                           )
UNIVERSITY OF KANSAS                       )
                                           )
                    Defendant.             )

## CLERK'S EXTENSION

The answer of Defendant The University of Kansas is currently due on or about June 15,

2016. The Defendant requests a 14-day extension to answer or otherwise respond to Plaintiff's

Petition pursuant to Supreme Court Rule 113.

Upon its application, the Defendant is hereby given an additional fourteen (14) days, to

and including June 29, 2016, in which to plead or otherwise respond to the Petition.

_____
CLERK OF THE DISTRICT COURT

SUBMITTED BY

 /s/ Megan K. Walawender
Megan K. Walawender, Kansas Sup. Ct. # 22955
University of Kansas
245 Strong Hall
1450 Jayhawk Blvd.
Lawrence, KS 66045
Tel:    (785) 864-3276
Fax:    (785) 864-4617
Email: megan.walawender@ku.edu
*Attorney for University of Kansas*

{L0052259.1 }

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed with the E-Filing system on June 14, 2016,

which will generate notice of filing emailed to:

Dan Curry
Sarah Brown
BROWN & CURRY, LLC
406 W. 34th Street, Suite 810
Kansas City, MO 64111
dan@brownandcurry.com
sarah@brownandcurry.com
*Attorneys for Plaintiff*

     /s/ Megan K. Walawender
*Attorney for University of Kansas*